Hanovia Chemical & Manufacturing Company v. Commissioner.
Hanovia Chem. & Mfg. Co. v. Commissioner
Docket No. 111871.
United States Tax Court
1943 Tax Ct. Memo LEXIS 103; 2 T.C.M. (CCH) 822; T.C.M. (RIA) 43435; September 23, 1943
*103 Marion N. Fisher, Esq., and Alfred C. Frodel, Esq., for the petitioner. Robert S. Garnett, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1938 in the amount of $16,083.77. Petitioner alleges that the respondent erred in his determination of the deficiency in holding that the petitioner was availed of during the year 1938 for the purpose of preventing the imposition of surtax upon its shareholders through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, and in holding that the petitioner was subject to the tax imposed by section 102 of the Revenue Act of 1938. Findings of Fact 1. Hanovia Chemical & Manufacturing Co. is a corporation organized under the laws of the State of New Jersey on May 8, 1905. For the year 1938 it filed its corporation income tax return with the collector of internal revenue for the fifth district of New Jersey. 2. Charles Engelhard was president, treasurer, and general manager of the petitioner and during 1938 the entire outstanding stock of petitioner was owned as follows: *104 Shares
Charles Engelhard
1,199
C. B. Mitchell
1
Emy Engelhard
300
Guaranty Trust Company of New
York, Trustee (for the benefit of
wife and son of Charles Engelhard)
300
3. Petitioner is one of a group of corporations engaged in various phases of the precious metals business. The principal company was Baker & Co., Inc. (hereinafter sometimes referred to as Baker), which was organized in 1903 under the laws of the State of New Jersey. The business of that company was refining, working, manufacturing, and dealing in platinum and other precious metals and in producing finished articles therefrom. The outstanding stock of that company was owned in 1938 as follows: Shares
C. W. Baker Estate
965
Charles Engelhard
5,268
Hanovia Chemical & Mfg. Co
5,611
Emy M. Engelhard
957 1/2
C. W. Engelhard, Jr.
41 1/2
Five other stockholders
193
Total
13,036
4. Charles Engelhard came to this country from Germany in 1891 at the age of 24 years. He had been connected with the precious metals business in Germany and desired to get into the same business in this country. In about 1904 he acquired a 10 percent interest in the stock of Baker & Co., Inc. and obtained a contract *105 by which he was to receive 10 percent of the net profits after a 4 percent return upon the invested capital of that company. At about the same time foreign interests acquired a majority of the stock. 5. Petitioner was organized to engage principally in the manufacture and sale of "liquid" gold, silver and platinum which is used in ceramics. A number of years prior to 1938 its business was expanded to include the manufacture of various types of apparatus requiring the use of quartz glass or fused quartz. Fused quartz has various valuable properties including a very high melting point, almost no co-efficient of expansion, transparence to ultra-violet rays, and resistance to most chemical action. It is used to produce crucibles for laboratory work, replacing platinum in this field to a considerable extent, and to produce tubes for mercury vapor lamps which permit emission of ultra-violet rays, valuable and beneficial in therapeutics, various forms of blue printing and picture printing, and irradiation of food products, such as milk, to build up vitamin constituents. 6. The petitioner's operations were profitable. Petitioner and Baker were engaged in related businesses. Engelhard gradually *106 acquired, either individually or through the petitioner, the stock of Baker held by the foreign interests. The plants of these two companies are located principally at Newark. 7. In 1938 the petitioner had four departments which were known as the ceramics department, the electrical department, the quartz department, and the financial department. During the years 1937, 1938, and 1939 the net profits or losses of these departments were as follows: 1937
1938
1939
Ceramics
$53,303.73
$30,776.90
$ 82,850.04
Electrical
(21,253.38)
210.08
(3,288.37)
Quartz
740.79
498.43
1,341.77
Financial
58,969.78
47,498.30
48,911.87
Total Net
Profit
$91,760.92
$78,983.71
$129,814.81
8. The ceramics department produces liquid gold and decorating materials for china and glass and liquid silver for the electrical industry. The quartz department produces principally quartz glass which is used in the manufacture of sun lamps. The quartz glass was widely used in the process of irradiation of milk. Most of the output of the quartz department went to the electrical department which manufactures sun lamps and other therapeutic apparatus. 9. The financial department of petitioner *107 was segregated from the other departments, inasmuch as the managers of the ceramics, electrical, and quartz departments shared in the net profits of their departments, and it was not the policy of Engelhard either to penalize or reward the managers because of income or losses of the financial department which was handled by him personally. The principal operations of the financial department consisted of the acquisition and sale of securities. 10. At the close of 1937 and 1938 the petitioner had investments in the stocks of other companies as follows: 1937
1938
Subsidiary and related companies: Baker & Co., Inc. (domestic)
$1,768,725.00
$1,780,725.00
Alpine Press, Inc. (domestic)
10,000.00
10,000.00
Hanovia, Ltd., England (foreign)
60,162.84
60,162.84
Hanovia Products, Ltd., England (foreign)
49,426.15
49,426.15
Hanovia Kagaku, K. K., Japan (foreign)
17,890.63
17,890.63
Nippon Hanovia Quartz Lamp Co., Ltd. (foreign)
78,470.09
78,470.09
Other companies: International Silver Co.
6,815.00
9,343.00
International Nickel Co.
134,000.00
134,000.00
Public Service Corporation of New Jersey
14,837.75
18,141.25
United Aircraft Corporation
12,313.50
Carrollton China, Inc.
979.46
979.46
Chemical Foundation Inc.
1,000.00
H. G. Fisher & Co.
1,095.00
1,095.00
Total
$2,143,401.92
$2,172,546.92
*108 11. All of the investments of the petitioner in subsidiary and related companies except those in Alpine Press, Inc., were in furtherance of its business. The Alpine Press, Inc. was formed for the publication of scientific books relating to the precious metals business. 12. Following is a tabulation of petitioner's net income, dividends received, income taxes, and dividends paid, and additions to buildings and plant equipment for the ten-year period 1929 to 1938, inclusive: Net Income
or (Loss)
Income
Reported in
Dividends
Taxes
Year
Tax Return
Received
Paid
1929
$481,285.59 $ $ 54,041.41
1930
138,313.21
50,022.50
16,597.58
1931
668.32
24,170.00
1932
(50,422.34)
12,085.00
1933
(28,666.68)
14,926.50
1934
(23,549.59)
25,345.50
1935
9,856.73
42,840.00
1,355.30
1936
97,437.94
20,544.83
1937
117,759.94
26,406.63
1938
94,976.47
10,605.09
Total
$837,659.59
$169,389.50
$129,550.84
Cash
Additions
Dividends
Building
Plant
Year
Paid
Account
Account
1929
$ 90,000.00
$462,891.10
$40,680.50
1930
90,000.00
2,436.20
14,667.42
1931
68,400.00
2,892.53
1932
34,200.00
1,804.98
1933
21,600.00
1,586.75
151.30
1934
21,600.00
450.50
3,054.92
1935
12,600.00
793.84
6,315.31
1936
19,800.00
3,960.08
6,167.47
1937
21,600.00
1,200.00
7,858.99
1938
21,600.00
1,800.00
6,019.53
Total
$401,400.00
$475,118.47
$89,612.95
*109 13. From December 31, 1929, to December 31, 1938, there was an increase in petitioner's earned surplus of $42,218.82, or an annual average of $4,690.98. 14. From time to time the petitioner advanced considerable sums of money to other corporations in the Engelhard industries group. The total amounts owed by subsidiary and related companies to petitioner at the close of 1937 and 1938 were $195,216.03 and $218,590.03, respectively. The amounts owed by petitioner to such companies at the end of each of these years were $11,848.63 and $1,158.41, respectively. 15. The petitioner's balance sheets at the close of 1937 and 1938 showed as follows: Assets
Dec. 31, 1937
Dec. 31, 1938
Cash
$ 22,999.25
$ 31,092.88
Notes receivable - trade
921.06
Accounts Receivable: Trade
161,620.44
166,159.26
Subsidiary and related companies
195,216.03
218,590.03
Due from officers and employees
54,771.12
73,355.37
Inventories
420,246.22
390,224.89
Stocks - Domestic: Subsidiary and realted companies
1,778.725.00
1,790,725.00
Other
24,727.21
41,872.21
Stocks - Foreign: Subsidiary and related companies
205,949.71
205,949.71
Other
134,000.00
134,000.00
Prepaid insurance, taxes and others
21,306.36
28,502.61
Land
250,974.00
250,974.00
Buildings
667,280.07
670,280.07
Machinery and Equipment
93,582.42
95,653.80
Delivery equipment
781.67
781.67
Other depreciable assets
Patents
58,555.46
61,254.21
Installment contracts receivable
78,926.46
69,912.00
Installment cost - contra
46,229.67
39,292.62
$4,216,812.15
$4,268,620.33
Liabilities
Notes Payable: Banks
$ 135,000.00
$ 140,000.00
Accounts Payable: Trade
12,695.77
15,939.07
Subsidiary and related companies
11,848.63
1,158.41
Due to officers and employees
7,767.40
3,319.70
Mortgages
100,000.00
100,000.00
Accrued interest and other accrued expenses
1,508.33
1,195.00
Accrued taxes
28,847.18
10,605.09
Installment cost - contra
46,229.67
39,292.62
Reserve for unrealized profit - installment
contracts
32,696.79
30,619.38
Reserves for depreciation
321,538.01
345,085.30
Reserve for bad debts
75,000.00
75,000.00
Reserve for valuation of real estate
250,000.00
250,000.00
Reserve for valuation of stocks
500,000.00
500,000.00
Capital stock - common
180,000.00
180,000.00
Surplus
2,513,680.37
2,576,405.76
$4,216,812.15
$4,268,620.33
*110 16. The net sales and inventory at the beginning of the year for certain years were as follows: Inventory
at the begin-
Year
Net Sales
ning of year
1929
$2,537,096.41
$571,147.64
1934
891,591.27
432,753.93
1935
863,080.21
399,287.43
1936
1,038,498.68
400,169.83
1937
1,164,350.90
397,044.91
1938
992,597.99
420,246.22
1939
1,304,407.79
390,224.89
1940
1,670,166.52
455,010.22
1941
2,468,047.84
480,158.72
17. From its inception petitioner paid Charles Engelhard a salary of $25 per week and no other compensation for his services. This was pursuant to an arrangement made with his brother-in-law in Germany, whose firm until 1916 had an interest in petitioner's stock, that Engelhard would give his services and the brother-in-law would furnish the petitioner with any developments of value to the business. 18. Petitioner's account with Charles Engelhard shows a balance due petitioner at the end of 1936 of $24,569.99. The balance increased until September 8, 1937, when it was $68,212.52 and there was then a cash repayment of $20,000, reducing the balance to $48,212.52. Between September 30, 1937, and the end of 1938 there were charges of interest or *111 further advances amounting to $40,711.75. During that time there were cash repayments of $9,424.27 and a credit for 30 shares of Baker & Co. stock turned over to the petitioner in the amount of $12,000. The total credits in that time were therefore $21,424.27 and the balance at the end of 1938 was $67,500. 19. The petitioner had net income for 1938 of $94,976.47 which was accounted for as follows: Cash Dividends paid
$21,600.00
Income taxes paid
10,605.09
Addition to surplus
62,725.39
Adjustment (Unexplained)
45.99
Total
$94,976.47
20. Petitioner did not in 1938 accumulate earnings or profits beyond the reasonable needs of its business. 21. Petitioner was not availed of during 1938, for the purpose of preventing the imposition of surtax upon its shareholders. Opinion The question presented is whether the petitioner in 1938 was "availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed." Section 102 (a), Revenue Act of 1938. Subdivison (c) of that section provides as follows: (c) *112 Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary. The respondent concedes that the petitioner was not formed for the purpose of preventing the imposition of surtax upon its shareholders. He contends, however, that it was "availed of" for that purpose upon the sole ground that its earnings or profits were permitted to accumulate beyond the reasonable needs of the business. Section 102 (c), quoted above, was new in the Revenue Act of 1938. In the report of the Senate Finance Committee (75th Cong., 3d Sess., S. Rept. 1567), it is said: This subsection of the bill provides that the fact that the earnings or profits are accumulated beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary. Under existing law, an unreasonable accumulation is merely prima facie *113 evidence of purpose to avoid surtax upon shareholders. Consequently, it has been argued that the only effect of an unreasonable accumulation is to shift to the taxpayer the burden of going forward with the evidence relating to purpose. Under the amendment, however, it is clear that an unreasonable accumulation puts upon the taxpayer the burden of proving by the clear preponderance of all the evidence submitted that it did not have the purpose of avoidance. This proceeding presents two questions - (1) whether during 1938 the petitioner accumulated earnings beyond the reasonable needs of its business; and (2) whether in any event it accumulated earnings for the purpose of preventing the imposition of surtax upon its shareholders. Charles Engelhard is a scientist who has received many honorary degrees for his work in connection with the production of platinum and other so-called platinum metals (rhodium, palladium, osmium, ruthenium, and iridium) with which platinum is ordinarily found in combination. He has developed many processes for the use of these metals and also of quartz glass. He has been the dominating person in some six or eight corporations, generally referred to as the *114 "Englehard Industries," which have been organized to cover specific fields. The record shows that Engelhard did not have sufficient capital for the expansion of his different enterprises. In order to expand some of the businesses one corporation which was in funds made advances to others. The several corporations have had to borrow large amounts from banks. Engelhard always had to endorse the notes of all of the corporations for the loans. The petitioner has been one of the corporations which has made loans to the other corporations. The success of the petitioner has been largely due to the personal efforts of Charles Engelhard who has served the corporation from the beginning at a salary of only $25 per week. He has at some times been in need of funds and has borrowed those funds from the petitioner. At the close of 1938 he was indebted to the petitioner in the amount of $67,200 for such loans. The evidence shows that the petitioner had net income including dividends received from domestic corporations for the ten-year period 1929 to 1938, inclusive, of $1,007,049.09. During the same period it paid income taxes in the amount of $129,550.84, cash dividends of $401,400, made additions *115 to buildings of $475,118.47, and to its plant equipment of $89,612.95. Its earned surplus increased from the close of 1929 to the close of 1938 in the amount of $42,218.82. There were large decreases in its earned surplus for the period 1931 to 1934, inclusive. Some years have shown large profits and others large losses. During the years 1929 to 1934 the entire group of Engelhard industries was hard hit by the financial depression. At the height of the depression a bank from which the several industries were borrowing $700,000 called the loan and the several corporations had to sacrifice securities in order to pay it off. The petitioner was an operating company. Its net sales for the three years 1936, 1937, and 1938 averaged about $1,000,000 each year. During the same period it had an inventory at the close of each year of approximately $400,000. Of the net income of $94,976.47, $21,600 was paid out in dividends to stockholders and $10,605.09 was paid for income taxes which were not deductible from gross income. The addition to surplus was only $62,725.39. Of this amount $42,218.82 served only to restore the surplus as it stood at December 31, 1929. What constitutes an accumulation *116 of earnings of an operating company beyond its reasonable needs is a question of fact to be determined in the light of all the evidence. It is shown above that over the nine-year period from December 31, 1929, to December 31, 1938, the petitioner had an increase in its surplus of only $42,218.82. At the close of the taxable year the petitioner was indebted to banks in the amount of $140,000 and upon mortgages, etc., in the amount of $120,417.17. We do not think that there was an accumulation of earnings in 1938 in excess of the reasonable needs of the petitioner's business. Assuming that petitioner's business did not warrant the purchase of shares of stock of other corporations (nearly all of which such purchases were made prior to 1930), the weight of the evidence is that the accumulation of earnings in 1938 was not with any purpose to prevent the imposition of surtax upon petitioner's shareholders. Engelhard testified that it was always his policy to distribute as dividends of the several corporations of which he was the dominant stockholder the earnings which he thought could safely be distributed. The evidence further shows that the distribution of dividends by the several Engelhard *117 corporations resulted in heavy surtaxes to be paid by Engelhard. From a consideration of all the evidence we conclude that the petitioner was not during 1938 availed of for the purpose of preventing the imposition of surtax upon its stockholders. Decision will be entered under Rule 50.